| |
|---|
| **Monzon v Rusk Renovations, Inc.** |
| 2024 NY Slip Op 33117(U) |
| September 5, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 154194/2021 |
| Judge: Judy H. Kim |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| **PRESENT:** | **HON. JUDY H. KIM** | **PART** 04 |
| | *Justice* | |

-------------------------------------------------------------------------X

ESTEBAN MONZON, CYNTHIA SANDERS,

                Plaintiffs,

      - v -

RUSK RENOVATIONS, INC., RUSK CONDOMINIUM LLC,

                Defendants.

-------------------------------------------------------------------------X

RUSK RENOVATIONS, INC.,

                Third-Party Plaintiff,

      -against-

TOP NOTCH FINISHES, INC.,

                Third-Party Defendant.

-------------------------------------------------------------------------X

**INDEX NO.** 154194/2021

**MOTION DATE** 01/08/2023, 03/17/2023, 04/04/2023

**MOTION SEQ. NO.** 004 005 006

## DECISION + ORDER ON MOTION

Third-Party
Index No. 595830/2021

The following e-filed documents, listed by NYSCEF document number (Motion 004) 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 82, 84, 85, 86, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 109, 110, 111, 127, 128, 129, 130, 131, 132, 133, 141

were read on this motion for                  JUDGMENT - SUMMARY        .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 122, 123, 124, 125, 126, 134, 135, 137, 138, 139, 140, 143, 144

were read on this motion for                  JUDGMENT - SUMMARY        .

The following e-filed documents, listed by NYSCEF document number (Motion 006) 118, 119, 120, 121, 142, 146

were read on this motion to                 AMEND CAPTION/PLEADINGS     .

        In this action, plaintiff Esteban Monzon seeks to recover for injuries he sustained on April 23, 2021, after falling from a ladder while working as a carpenter at a renovation of 11 Jane Street, New York, New York. Plaintiffs assert claims against the general contractor for the renovation,

**154194/2021  MONZON, ESTEBAN vs. JCM JANE STREET ASSOCIATES LLC**
**Motion No.  004 005 006**

**Page 1 of 13**

1 of 13

Rusk Condominium, LLC, and a related entity, Rusk Renovations, Inc. (collectively, "Rusk") for negligence, violations of Labor Law §§200, 240(1) and 241(6), and loss of consortium. Rusk Renovations, Inc., in turn, commenced a third-party action against Monzon's employer, Top Notch Finishes, Inc. ("Top Notch") asserting claims for breach of contract, contribution, and common law and contractual indemnification.

## FACTUAL BACKGROUND

At his deposition, Monzon testified that he was a foreman for Top Notch, a construction company that specializes in laying out walls and ceilings (NYSCEF Doc. No. 74 [Monzon EBT at p. 21). As foreman, he assigned work to the other Top Notch employees each day (Id.). On the day of his fall, he assigned two to three Top Notch employees to work in the building's basement and directed two Top Notch employees to work on the first floor using the sole Baker Scaffold available on that floor, because they were new and he did not "want them to do any mess" (Id. at pp. 43-44).

Monzon's accident occurred at approximately 1:30 pm after Rusk's Superintendent, "Mike" asked him to measure the ceiling frame to ensure a light would fit as planned (Id. at pp. 53, 126-127). According to Monzon, "Mike" was in a rush to finish the first-floor ceiling because the owner of the property was inspecting the progress of the renovations at some point that day (Id. at pp. 41, 53). "Mike" directed Monzon to use one of Rusk's twelve-foot A-frame ladders to take this measurement (Id. at pp. 33, 44). Monzon testified that before he ascended the ladder all four of its feet were on the concrete floor, which was clean and flat (Id. at pp. 47-51, 86). He ascended the ladder, climbing to the tenth rung, approximately ten feet off the ground (Id. at p. 56). The ladder did not move during his ascent (Id.). However, while he was using his tape measure

154194/2021   MONZON, ESTEBAN vs. JCM JANE STREET ASSOCIATES LLC          Page 2 of 13
Motion No.  004 005 006

2 of 13

[* 2]

to show "Mike" the measurement in question, the ladder shook and he fell off and landed on the floor in an upright position, injuring his heel bone, lower, back, and knees (Id. at pp. 57-59, 128).

In opposition, Rusk submits the deposition testimony of Frederick Sutton Elliot III, its Superintendent at the site (who all parties agree is the "Mike" referred to by Monzon), and an affidavit largely mirroring his testimony. In this affidavit, Elliot states that:

> On April 23, 2021, plaintiff was working on framing the ceiling on the first floor of 11 Jane Street. In the afternoon, he was working on measuring the ceiling on the first floor. Plaintiff elected on his own accord to use a ten (10) foot ladder to measure the ceiling, despite there being a Baker Scaffold in the room at the time. I did not tell him to use the ladder to measure the ceiling. The Baker Scaffold was owned by TOP NOTCH FINISHES INC. and was either four by six (4x6) feet or four by eight (4x8) feet and contained outriggers and railings.
>
> The ladder that plaintiff used to measure the ceiling was a ten (10) foot A-frame fiber glass ladder with rubber footing on all four (4) feet. Plaintiff opened and set up the ladder on the ground himself. The ground upon which plaintiff set up the ladder was concrete, level and free of debris. Additionally, the ladder was not placed on a slippery surface and the ground beneath it was dry. The ladder appeared to be free of any defects and I had not received any complaints about the ladder from plaintiff or anyone else on site, either that day or any day prior. Prior to the accident, plaintiff had ascended and descended the ladder multiple times that day
>
> I observed plaintiff ascend the ladder while holding a piece of black iron in his hand. I did not observe the ladder move or shake in any way as plaintiff ascended it, just before the incident occurred. Once plaintiff reached the fifth or sixth rung of the ladder, for no apparent reason, he fell backwards onto the ground. No one had knocked into the ladder before the fall, nor did I observe the ladder move or shake in any way.
>
> The ladder never fell to the ground or moved in any way when plaintiff was ascending the ladder or when he fell off of it. After plaintiff had fallen backwards onto the ground, I observed the ladder to be in the exact same position as it had been when plaintiff initially set it up. From the time that plaintiff set it up to when plaintiff fell onto the ground, the ladder never moved, slipped, tipped, shook or collapsed in any way. Additionally, after the fall, the ladder remained in an upright position in the exact same area and place it had been initially set up by plaintiff just before ascending it.

(NYSCEF Doc. No. 85 [Elliot Aff. at ¶¶7-10]).

**154194/2021   MONZON, ESTEBAN vs. JCM JANE STREET ASSOCIATES LLC**
**Motion No.  004 005 006**

**Page 3 of 13**

3 of 13

[* 3]

In motion sequence 004, plaintiffs move for summary judgment on the complaint's Labor Law §§240(1) and 241(6) claims, arguing that Monzon's testimony establishes that his use of an unsecured ladder which shook while a proper safety device—a Baker scaffold—was available is prima facie evidence of defendants' violation of these statutes.

Rusk opposes the motion, arguing that Elliot's testimony establishes that the ladder did not shake or move and, therefore, the Labor Law is not implicated. Rusk also argues that Monzon was the sole proximate cause of the accident because, as Top Notch's foreman on the site, he had the discretion to choose the device he used and chose the ladder when a Baker scaffold was available. Top Notch also opposes the motion, arguing that plaintiff's testimony should not be credited because it would have been physically impossible for him, as a five foot tall man, to have stood at or near the top of the twelve foot ladder when the ceiling he was working on was thirteen feet high and, in addition, Monzon's version of events is undermined by his own text messages from the date of the incident (stating that he fell from the middle of the ladder) and his statement to a doctor at the hospital that someone had bumped the ladder.

In motion sequence 005, Top Notch moves, pursuant to CPLR 1008 and CPLR 3212, for summary judgment dismissing plaintiffs' complaint against Rusk. Top Notch argues that given the inconsistencies in Monzon's testimony, the only feasible explanation for Monzon's fall was provided by Elliot, i.e., that he lost his balance. In the alternative, Top Notch moves for summary judgment dismissing the third-party complaint's claims for contribution and common law indemnity, pursuant to Worker's Compensation Law §11, and dismissing its contractual indemnification claim on the grounds that Rusk Renovations is not as a party entitled to indemnification under Top Notch's agreement with Rusk Condominium for the work performed at 11 Jane Street (the "Subcontractor Agreement").

**154194/2021   MONZON, ESTEBAN vs. JCM JANE STREET ASSOCIATES LLC**          **Page 4 of 13**
**Motion No.  004 005 006**

4 of 13

In motion sequence 006, Rusk Renovations moves to amend the third-party complaint to add Rusk Condominium as a third-party plaintiff. These motions are consolidated for disposition and, for the reasons set forth below, Rusk Renovations' motion to amend the third-party complaint is granted, plaintiff's motion for summary judgment is denied, and Top Notch's motion for summary judgment is granted in part.

## DISCUSSION

### Motion Sequence 006

Rusk Renovations' motion to amend its third-party complaint to add Rusk Condominium as a plaintiff is granted. Leave to amend pleadings "should be freely given and denied only if there is prejudice or surprise resulting directly from the delay or if the proposed amendment is palpably improper or insufficient as a matter of law" (McGhee v Odell, 96 AD3d 449, 450 [1st Dept 2012] [internal citations and quotations omitted]) and the amendment sought is neither palpably improper nor insufficient as a matter of law. Rusk Renovations' delay in making the instant motion is not a bar to amendment since no prejudice (or even surprise) results—Top Notch cannot claim to be unaware that it entered into the Subcontractor Agreement with Rusk Condominium, which has been a named party in this action since November 1, 2022 (See e.g., Maor v One Fifty Fifty Seven Corp., 169 AD3d 497, 498 [1st Dept 2019] ["defendants 'cannot demonstrate prejudice resulting directly from [any] delay' in moving to add Garcia, who was identified as a putative plaintiff and deposed by defendants"]). While Top Notch notes that it has not deposed a Rusk Condominium witness, this is of no moment; Top Notch has deposed a Rusk Renovations witness as to the events at issue and fails to articulate any information relevant to Rusk's indemnification and contribution claims that a further deposition would reveal.

**154194/2021   MONZON, ESTEBAN vs. JCM JANE STREET ASSOCIATES LLC**
**Motion No.  004 005 006**

**Page 5 of 13**

5 of 13

<u>Motion Sequence 004</u>

Plaintiffs' motion for summary judgment on their Labor Law §§240(1) and 241(6) claims is denied. "The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers. Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (<u>Alvarez v Prospect Hosp.</u>, 68 NY2d 320, 324 [1986] [internal citations omitted]).

> Labor Law §240(1), known as the "Scaffold Law," provides, in pertinent part:
>
> All contractors and owners and their agents ... in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed

(Labor Law § 240[1]).

This statute "was designed to prevent those types of accidents in which the scaffold ... or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person" (<u>John v Baharestani,</u> 281 AD2d 114, 118 [1st Dept 2001] [internal citations omitted]) and "can be violated either when no protective device is provided, or when the device provided fails to furnish proper protection" (<u>Josifi v NG</u>, 2010 NY Slip Op. 33456[U] [Sup Ct, NY County 2010]).

However, "[a] fall from a scaffold or ladder, in and of itself, does not result in an award of damages to the injured party under section 240(1)" (<u>Albino v 221-223 W. 82 Owners Corp.</u>, 142

154194/2021   MONZON, ESTEBAN vs. JCM JANE STREET ASSOCIATES LLC                Page 6 of 13
Motion No.  004 005 006

6 of 13

[* 6]

AD3d 799, 801 [1st Dept 2016] [internal citations and quotations omitted]). As pertinent here, "[w]here a plaintiff falls off the ladder because he or she lost his or her balance, and there is no evidence that the ladder from which the plaintiff fell was defective or inadequate, liability pursuant to Labor Law §240(1) does not attach" (Hugo v Sarantakos, 108 AD3d 744, 745 [2d Dept 2013] [internal citations omitted]; see also Albino v 221-223 W. 82 Owners Corp., 142 AD3d 799, 801 [1st Dept 2016] [internal citations and quotations omitted]).

The conflict between Monzon and Elliot's testimony as to the circumstances of his fall, along with the discrepancies between Monzon's testimony and his post-accident statements as to the cause of his fall, creates an issue of fact as to whether Monzon's fall was due to an inadequate ladder or because he simply lost his footing, precluding summary judgment on plaintiff's Labor Law 240(1) claim at this juncture[1] (See e.g., Ellerbe v Port Auth. of New York and New Jersey, 91 AD3d 441, 442 [1st Dept 2012]; Antenucci v Three Dogs, LLC, 41 AD3d 205, 206 [1st Dept 2007]).

This issue of fact also precludes summary judgment on plaintiffs' Labor Law §241(6) claim. That statute provides that

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements … All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places

---

[1] The discrepancies between Elliot's affidavit and EBT testimony noted by plaintiffs—to wit, that he testified that Monzon was on the third or fourth rung of a twelve-foot ladder while his affidavit states that Monzon was on the fifth run of a ten-foot ladder and that he testified that the accident occurred during Monzon's ascent while his affidavit states that the accident occurred "while Plaintiff was measuring the ceiling"—do not require that the Court discount his testimony but create, at most, an issue of credibility for the fact-finder (See Lin v 100 Wall Street Property LLC, 193 AD3d 650 [1st Dept 2021] ["While plaintiff testified at his deposition that he fell from the 4th step of the ladder and the ambulance and hospital records reflect that plaintiff fell from the 3rd step, that discrepancy alone does not create an issue of fact. No credibility issue is presented because Labor Law § 240 (1) was violated whether plaintiff fell from the 3rd or the 4th step of the ladder"]).

154194/2021  MONZON, ESTEBAN vs. JCM JANE STREET ASSOCIATES LLC
Motion No.  004 005 006

Page 7 of 13

7 of 13

(Labor Law §241[6]).

"To make a case under Labor Law §241(6), plaintiff must prove that defendants violated a rule or regulation of the Commissioner of Labor that sets forth a specific standard of conduct" which violation proximately caused plaintiff's injuries (Cammon v City of New York, 21 AD3d 196, 198 [1st Dept 2005] citing Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501-505 [1993]). Since issues of fact exist as to whether plaintiff was the proximate cause of his injuries, rather than any violation of the Industrial Code, summary judgment is not appropriate (See e.g., Piazza v CRP/RAR III Parcel J, LP, 103 AD3d 580, 581 [1st Dept 2013]; Josifi v NG, 2010 NY Slip Op 33456[U] [Sup Ct, NY County 2010]).

Motion Sequence 005

Top Notch's motion for summary judgment dismissing the complaint is granted, in limited part, as to the Labor Law 241(6) claim. While the complaint asserts that defendants violated Industrial Code sections 23-1.5, 23-1.16 and 23-1.21,(1), (b)(1), (b)(3), (b)(4), (b)(e)(3), (e)(2) and (e)(3) (NYSCEF Doc. No. 52), Top Notch addresses each of these sections and argues that none apply. In opposition, plaintiff fails to address sections 23-1.16 or 23-1.21,(1), (b)(1), (b)(e)(3), and (e)(2) and they are therefore dismissed as abandoned (See Kempisty v 246 Spring Street, LLC, 92 AD3d 474 [1st Dept 2012]). This leaves sections 23-1.5, and 23-1.21(b)(4), (b)(e)(3), and (e)(3), of which only section 23-1.21(e)(3) is even potentially viable as a basis for a Labor Law §241(6) claim.

Specifically, Industrial Code 23–1.5(a) is a "general safety regulations that may not serve as a basis for a Labor Law §241(6) claim" (DeFillipo v 270 Broadway Assoc., LLC, 2008 NY Slip Op 30439[U] [Sup Ct, NY County 2008]; see also Marte v Tishman Constr. Corp., 223 AD3d 527, 529 [1st Dept 2024]), as are sections 1.5(b) and 1.5(c)(1) and (2) (See Jackson v Hunter Roberts

154194/2021   MONZON, ESTEBAN vs. JCM JANE STREET ASSOCIATES LLC
Motion No.  004 005 006

Page 8 of 13

8 of 13

Constr. Group, LLC, 161 AD3d 666, 667 [1st Dept 2018]). While 12 NYCRR §23–1.5(c)(3) is sufficiently specific to support a claim (See id.), its mandate that all equipment be kept sound and operable and immediately removed and repaired if damaged does not apply here, since there is no dispute that the ladder at issue was sound and operable on the date in question (See e.g. Santos v Bop Greenpoint D LLC, 2024 NY Slip Op 30194[U], 16-17 [Sup Ct, Kings County 2024]). Industrial Code §23-1.21(b)(3), which requires that ladders are maintained in good condition and not used if defective conditions exist, is inapplicable for the same reason. Neither does section 23-1.21(b)(4)(iv) apply, as it governs leaning ladders rather than the A-frame ladder used here (Fong v Memorial Hosp. for Cancer & Allied Diseases, 2022 NY Slip Op 31596(U) [Sup Ct. NY County 2022] citing Rivera v Suydam 379 LLC, 216 AD3d 495, 496 [1st Dept 2023]).

This leaves section 23-1.21(e)(3), which provides that "[w]hen work is being performed from a step of a stepladder 10 feet or more above the footing, such stepladder shall be steadied by a person stationed at the foot of the stepladder or such stepladder shall be secured against sway by mechanical means." As there is a question of fact as to whether Monzon was working ten feet or more above ladder footings such that defendants failure to secure the ladder violated this provision, that branch of Top Notch's motion for summary judgment dismissing the Labor Law §241(6) claim is granted except to the extent plaintiff's Labor Law 241(6) claim relies upon Industrial Code §23-1.21(e)(3).

The remainder of Top Notch's motion to dismiss plaintiffs' complaint is denied. That branch of its motion for summary judgment dismissing the Labor Law §240(1) claim is denied for the reasons set forth above, i.e., the contradictions between Monzon and Elliot's version of events which leave predicate issue of fact to be resolved at trial. Top Notch's argument that plaintiff's exercise of his discretion, as foreman, to use a ladder rather than the Baker scaffold makes him the

154194/2021   MONZON, ESTEBAN vs. JCM JANE STREET ASSOCIATES LLC
Motion No.  004 005 006

Page 9 of 13

9 of 13

sole proximate cause of an incident is unavailing. To establish that the plaintiff was the sole proximate cause of an injury, a defendant must prove that "plaintiff had adequate safety devices available; that he knew both that <u>they were available and that he was expected to use them;</u> that he chose for no good reason not to do so; and that had he not made that choice he would not have been injured" (<u>Auriemma v Biltmore Theatre, LLC</u>, 82 AD3d 1, 10 [1st Dept 2011] [emphasis added]). In this case, an issue of fact remains as to whether plaintiff could in fact have chosen to use the Baker scaffold, in light of his testimony that Elliot was pressuring him to work quickly and presented him with a ladder to perform the work requested (<u>See</u> <u>DeRose v Bloomingdale's Inc.</u>, 120 AD3d 41, 45-46 [1st Dept 2014]). That branch of Top Notch's motion to dismiss plaintiff's Labor Law §200 claim is also denied, as it is predicated on the Court concluding that plaintiff was the sole proximate cause of his accident, a conclusion it has not reached.

Turning to Top Notch's motion for summary judgment dismissing the third-party complaint, this motion is granted as to Rusk's claims for contribution and common law indemnity, as it is undisputed that plaintiff was a Top Notch employee who accepted workers' compensation benefits and did not sustain a grave injury, mandating dismissal under Worker's Compensation Law §11 (<u>See</u> <u>Castro v United Container Mach. Group, Inc.</u>, 96 NY2d 398, 401 [2001]).

That remainder of the motion, seeking summary judgment dismissing the third-party complaint's contractual indemnification claim is denied, however. The Subcontractor Agreement provides that Top Notch would indemnify Rusk Condominium as well as its "agents and employees of any of them from and against claims … arising out of or resulting from (a) performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) but only to the extent caused by the

154194/2021   MONZON, ESTEBAN vs. JCM JANE STREET ASSOCIATES LLC
Motion No.  004 005 006

Page 10 of 13

10 of 13

negligent acts or omissions of the Subcontractor…" and, in the Rider to that agreement, "all entities [Rusk Condominium] is required to indemnify" (See NYSCEF Doc. 120 [Subcontractor Agreement]). Even crediting Top Notch's argument that the failure to identify Rusk Renovations as an agent or employee in the Subcontractor Agreement precludes it from seeking indemnification under section 4.7 (See e.g., Tonking v. Port Authority, 3 NY3d 486 [2004]), it remains unsettled at this juncture whether Rusk Renovations is an entity Rusk Condominium is contractually obligated to indemnify such that Rusk Renovations may assert a claim under the Subcontractor Agreement. In any event, the addition of Rusk Condominium as a third-party plaintiff renders this issue moot, as there can be no dispute that Rush Condominium can assert an indemnification claim under the Subcontractor Agreement.

Accordingly, it is

**ORDERED** that Rusk Renovations, Inc.'s motion to amend the third-party complaint is granted; and it is further

**ORDERED** that this action shall bear the following caption:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X
ESTEBAN MONZON, CYNTHIA SANDERS,

                        Plaintiff,                      Index No. 154194/2021

        -against-

RUSK RENOVATIONS, INC., RUSK CONDOMINIUM LLC,

                      Defendants.
-------------------------------------------------------------------------X
RUSK RENOVATIONS, INC., RUSK CONDOMINIUM LLC,

                  Third-Party Plaintiff,
        -against-

TOP NOTCH FINISHES, INC.,                      Third-Party Index No. 595830/2021

                  Third-Party Defendants.
-------------------------------------------------------------------------X

and it is further

**ORDERED** that the Amended Third-Party Complaint in the form annexed to its moving papers (NYSCEF Doc. No. 121) shall be deemed served upon all parties upon Rusk Renovations, Inc.'s service of a copy of this decision and order with notice of entry on those parties; and it is further

**ORDERED** that plaintiff's motion for summary judgment is denied; and it is further

**ORDERED** that the branch of Top Notch's motion for summary judgment dismissing the complaint as against Rusk Renovations and Rusk Condominium is granted to the limited extent that plaintiff's Labor Law §241(6) claim is dismissed insofar as it is predicated upon alleged violations of Industrial Code §§23-1.5, 23-1.16 and 23-1.21(1), (b)(1), (b)(3), (b)(4), (b)(e)(3), and (e)(2), and is otherwise denied; and it is further

**ORDERED** that the branch of Top Notch's motion for summary judgment dismissing the third-party complaint is granted to the extent that the third-party complaint's claims for conversion and common law indemnification are dismissed, and is otherwise denied; and it is further

**ORDERED** that Rusk Renovations, Inc. shall serve a copy of this decision and order, with notice of entry, on plaintiffs and third-party defendant within ten days of the date of this decision and order; and it is further

**ORDERED** that Rusk Renovations, Inc. shall, within ten days of the date of this decision and order, serve a copy of this decision and order, with notice of entry, upon the County Clerk (60 Centre Street, Room 141B) and the Clerk of the General Clerk's Office (60 Centre Street, Room 119) who are directed to mark the court's records to reflect the amended caption; and it is further

**154194/2021   MONZON, ESTEBAN vs. JCM JANE STREET ASSOCIATES LLC**
**Motion No.  004 005 006**

Page 12 of 13

12 of 13

**ORDERED** that such service upon the County Clerk and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address (www.nycourts.gov/supctmanh).

This constitutes the decision and order of the Court.

9/5/2024
DATE

HON. JUDY H. KIM, J.S.C.

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | X DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

154194/2021   MONZON, ESTEBAN vs. JCM JANE STREET ASSOCIATES LLC
Motion No.  004 005 006

Page 13 of 13

13 of 13